

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| DEBORAH HAWES, individually and as Personal Representative of the Estate of Richard Hawes, <br><br> Plaintiff, <br><br> vs. <br><br> CART PRODUCTS, INC. f/k/a WARREN & SWEAT MANUFACTURING COMPANY, INC.; U.S.L. PRODUCTS, INC.; HUNTER'S HIDEOUT, INC., <br><br> Defendants. | **CIVIL ACTION NO. 8:04-23139-HFF** |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

This is a products liability case.  Defendant asserts that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1446(a) and 1332, while Plaintiff claims that the Court lacks jurisdiction because of improper removal.  Pending before the Court are Plaintiff's motion to remand to state court and Defendant's motion to vacate an entry of default and to vacate an order of reference and unliquidated damages hearing.  Having carefully considered the motions, the responses, the replies, the record, and the applicable law, it is the judgment of this Court that Plaintiff's motion to remand be denied and Defendant's motion to vacate be granted.

1

## II.     FACTUAL AND PROCEDURAL HISTORY

On November 2, 2002, Richard Hawes died as a result of falling from a deer stand which collapsed while he was sitting in it. Plaintiff Deborah Hawes (Hawes) filed this action as a wrongful death and survival action in the South Carolina Court of Common Pleas of McCormick County on April 26, 2004. In her complaint, Hawes alleged causes of action in strict liability and negligence against Defendants Cart Products, Inc. (Cart Products), U.S.L. Products, Inc. (U.S.L.), and Hunter's Hideout, Inc. (Hunter's Hideout). U.S.L. failed to answer or appear in the suit, and an entry of default was noted by the McCormick County Clerk of Court in July of 2004. Hunter's Hideout and Cart Products were dismissed from this suit in November of 2004.

U.S.L. first appeared in the suit on November 10, 2004, when it filed a motion, in state court, for relief from the entry of default and to vacate the order of reference and damages hearing and/or continue the damages hearing set for November 11, 2004. On December 1, 2004, U.S.L. removed this action to this Court on the basis of diversity of citizenship and an amount in controversy in excess of $75,000 under 28 U.S.C. § 1446(a).

## III.    STANDARDS OF REVIEW

### A.     Motion to Remand

A party seeking removal bears the burden of establishing the existence of federal jurisdiction. *Mulachey v. Columbia Organic Chems. Co*, 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction raises significant federalism concerns, a district court must strictly construe removal jurisdiction. *Id.* (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941)). Further, if federal jurisdiction is in doubt, a remand is necessary. *Id.*

### B. Motion to Vacate Entry of Default

The disposition of a motion to set aside an entry of default is committed to the discretion of the trial court. *Consolidated Masonry & Fireproof, Inc. v. Wagman Constr. Co.*, 383 F.2d 249, 251 (4th Cir. 1967). In exercising its discretion, a court should give effect to the federal policy preference that cases should proceed to adjudication on their merits. *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974). Finally, the rules authorizing relief from default should be construed liberally, and any doubt about whether relief should be granted to a defendant should be resolved in favor of setting aside the default and adjudicating a case on its merits. *Augusta Fiberglass Coatings, Inc. v. Fodor Contacting Corp.*, 843 F.2d 808, 810-11 (4th Cir. 1988); *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)

## IV.    DISCUSSION

### A.    Motion to Remand

Hawes argues that the Court should remand this action to state court on the following grounds: (1) the complaint was initially removable on its face and U.S.L. did not remove the case within thirty days of receiving a copy of the complaint, (2) complete diversity existed when the complaint was filed in state court because Hunter's Hideout did not have a principal place of business in South Carolina when the suit was filed and U.S.L. did not remove the case within thirty days of receiving a copy of the complaint, (3) U.S.L.'s removal should fail because U.S.L. was in default at the time of removal, (4) U.S.L.'s removal should fail because U.S.L. failed to allege the citizenship of each party in the Amended Notice of Removal, (5) U.S.L.'s argument that the thirty days for removal did not start to run until November 9, 2004 is without merit, and (6) U.S.L. should be equitably estopped from removing the case and U.S.L. waived its right to remove by litigating in

3

state court. Additionally, Hawes argues that, if the Court grants her motion to remand, it should award her attorneys' fees incurred as a result of U.S.L.'s removal. For the reasons stated below, the Court denies Hawes' motion.

### 1.     Grounds for removal apparent on the face of the complaint

To remove a case to federal court, a defendant must file a notice of removal within thirty days after receipt by the defendant of a copy of the initial pleading stating the cause of action or, if the action is not removable at the outset, within thirty days from receipt by the defendant of a pleading, motion, order, or other paper from which it may first be ascertained that he case is one which is or has become removable. 28 U.S.C. § 1446(b). When interpreting this language, the United States Court of Appeals for the Fourth Circuit held that:

> only where an initial pleading reveals a ground for removal will the defendant be bound to file a notice of removal within 30 days. Where, however, such details are obscured or omitted, or indeed misstated, that circumstance makes the case "*stated* by the initial pleading" not removable, and the defendant will have 30 days from the revelation of grounds for removal in an amended pleading, motion, order, or other paper to file its notice of removal

*Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997) (emphasis in original).

The Circuit Court's decision in *Lovern* dictates the disposition of Hawes' motion to remand in the instant case. In a suit against a corporate defendant, the corporation's place of incorporation and location of the principal place of business are critical because both locations determine the states in which the corporation is a citizen for diversity purposes. 28 U.S.C. § 1332(c)(1). Here, the complaint alleged that U.S.L. and Hunter's Hideout both were corporations "organized under one of the fifty states." Complaint at ¶¶ 3-4. The complaint further alleged that U.S.L. and Hunter's Hideout both "[were] authorized to conduct business in South Carolina; [conduct] business in South

4

Carolina; [derive] significant revenue from [their] activities in South Carolina; and [are] therefore subject to suit in South Carolina courts." *Id.* Finally, the complaint states that "Hunter's Hideout maintains a location and an agent of service in South Carolina." *Id.* at ¶ 4.

Hawes argues that this language adequately establishes the citizenship of U.S.L. and Hunter's Hideout so that diversity of citizenship was apparent on the face of the complaint. Plaintiff's Amended Memorandum in Support of Motion to Remand (Plaintiff's Memorandum) at 12. U.S.L., on the other hand, asserts that these allegations do not specifically state the place of incorporation or the location of the principal place of business of either U.S.L. or Hunter's Hideout and, thus, fail to show that complete diversity existed. Defendant U.S.L.'s Memorandum in Opposition to Plaintiff's Amended Motion to Remand (Defendant's Memorandum) at 12-14.

The Court finds U.S.L.'s argument persuasive. Because the complaint did not reveal where U.S.L. and Hunter's Hideout were incorporated or where they maintained their principal places of business–or at the very least obscured these locations–it was not apparent on the face of the complaint whether diversity existed. Further, whether U.S.L. knew of the state in which Hunter's Hideout was incorporated or maintained its principal place of business is irrelevant. As the court stated in *Lovern*, objective knowledge of the citizenship of the parties, as stated in the initial pleadings and documents exchanged by the parties, rather than the subjective knowledge of the defendant, determines whether a case is removable as initially filed. 121 F.3d at 162. Here, the complaint merely stated that two corporate defendants were "organized under one of the fifty states" and that they transacted business in South Carolina. The complaint gave no indication as to the states of incorporation of these defendants or the location of their principal places of business.

Therefore, as pled within the four corners of the complaint, this case was not initially removable by any defendant.[1]

### 2. Removal within thirty days of action becoming removable

As this case was not initially removable, Defendants could exercise their right to remove within thirty days of any pleading, motion, order, or other paper showing that the case was subject to removal. 28 U.S.C. § 1446(b). In the instant case, U.S.L. argues that this thirty-day period did not begin to run until (1) November 23, 2004, when all non-diverse Defendants were dismissed or (2) November 10, 2004, when U.S.L. first appeared in this action. Defendant's Memorandum at 2. Hawes, in addition to arguing that the complaint adequately established the citizenship of the parties, asserts that U.S.L. received notice of the existence of this case by (1) service on a statutory agent (the Minnesota Secretary of State) on May 26, 2004, or (2) by communication with an agent of U.S.L.'s insurance carrier during July of 2004. Plaintiff's Memorandum at 3, 14. Regardless of which of these two events afforded U.S.L. notice of this action, Hawes argues, U.S.L.'s thirty-day period to remove the case elapsed long before removal of this case on December 2, 2004. *Id.*

Hawes' arguments are unpersuasive. Assuming, arguendo, that U.S.L. was properly served through the Minnesota Secretary of State in May of 2004 or by contact with an agent of its insurance carrier in July of 2004,[2] U.S.L. would, nonetheless, have been aware of nothing more than the

---

[1] Both Hawes and U.S.L. have extensively briefed the Court on whether Hunter's Hideout maintained a principal place of business in South Carolina at the commencement of this action. The parties correctly view this issue as determining whether complete diversity existed when this action was filed. However, the Court need not decide the issue because, even if Hunter's Hideout did not maintain a principal place of business in South Carolina when this action was filed (and, thus, complete diversity existed), this fact was not disclosed on the face of the complaint and, as discussed above, this rendered the action not removable as initially filed.

[2] *But see infra* at 15-17.

existence of Hawes' lawsuit and the allegations pled in the complaint.  As noted above, the complaint failed adequately to allege the citizenship of U.S.L. and Hunter's Hideout.  Thus, the case, as stated in the complaint, would not have been removable by U.S.L. even had it received a copy of the complaint in May or July of 2004.  Again, as noted by the court in *Lovern*, a defendant has thirty days from the revelation of grounds for removal in an amended pleading, motion, order, or other paper to file a notice of removal.  121 F.3d at 162.  The Court can find no evidence in the record that the states of citizenship of Hunter's Hideout and U.S.L. were revealed in any document prior to the dismissal of Hunter's Hideout and Cart Products from this action on November 23, 2004.  Because U.S.L. filed its notice of removal within thirty days from that date, it properly removed the case to this Court.

### 3.     Removal while in default

In finding that this action was properly removed, the Court rejects Hawes' contention that U.S.L. cannot remove this action because it is in default.  Hawes argues that U.S.L. should not be permitted to remove this action to federal court because U.S.L. was in default at the time of removal. Hawes, however, cites no authority–nor has the Court discovered any–to support the proposition that a defendant who is in default is barred remove a case to federal court.  Rather, as noted by U.S.L., the weight of authority establishes that a defendant has the ability to remove a case to federal court where an entry of default or default judgment has previously been entered in state court.  *See, e.g., Harter Township v. Kernochan*, 103 U.S. 562 (1880); *Butner v. Neustadter*, 324 F.2d 783 (9th Cir. 1963); *Munsey v. Testworth Laboratories, Inc.*, 227 F.2d 902 (6th Cir. 1955).  Therefore, having examined the applicable law, the Court concludes that an entry of default against U.S.L. in the instant case does not prevent removal.

### 4.      Equitable estoppel and waiver

The Court likewise rejects Hawes' assertion that U.S.L. should be equitably estopped from removing this action and that U.S.L. waived its right to exercise removal by litigating in state court. In essence, Hawes premises her estoppel argument on two allegations: U.S.L. was negligent in failing to establish a forwarding address for service of process and Hawes will be "severely prejudiced" if forced to conduct further litigation in federal court. Plaintiff's Memorandum at 15-16. These arguments are merely a recitation of Hawes' previous contention that U.S.L. was properly served when Hawes served the Minnesota Secretary of State. As noted above, whether Hawes effected proper service on the Minnesota Secretary of State is irrelevant to the motion to remand because even if proper service had occurred, the complaint was not removable on its face. Furthermore, the only potential prejudice Hawes could suffer from the denial of her motion to remand is the litigation of this case in federal rather than state court. Clearly, this falls short of the "severe prejudice" standard Hawes claims to have met. Therefore, the Court finds that equity fails to support Hawes' motion to remand this action to the South Carolina courts.

Hawes' waiver argument claims that U.S.L. waived its right to remove this action by conducting litigation in state court. Hawes cites authority supporting the position that a defendant can waive its right to remove a case by litigating in state court prior to filing a notice of removal, Plaintiff's Memorandum at 18, and maintains that U.S.L. did so here. U.S.L., on the other hand, asserts that it merely filed defensive pleadings and motions in state court and, this, did not thereby waive its right to remove the case. It is true that a defendant may waive his right to remove an action to federal court by litigating in state court. Waiver, however, requires a "clear and unequivocal intent to remain in state court" and "should only be found in extreme situations." *Aqualon Co. v.*

*Mac Equipment, Inc.*, 149 F.3d 262, 264 (4th Cir. 1998). In addition, waiver is a factual determination to be made by the district court. *Id.* The Court of Appeals has recognized that a defendant will waive his right to remove a case only where he has taken some substantial affirmative or defensive action. *Id.*; *Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 58 (4th Cir. 1991).

The facts of the instant case do not indicate that U.S.L. established a clear and unequivocal intent to remain in state court, nor do they present an extreme situation. The only action taken by U.S.L. in state court was to file responsive and defensive pleadings, namely the filing of a motion for relief from default, a motion challenging service of process, a motion to continue the damages hearing, and a motion to shorten the time for discovery responses (so as to allow U.S.L. to meet deadlines for a hearing on its motion for relief from default). Although there is no case in this Circuit directly on point, at least one other district court has held that taking action to set aside a default judgment does not qualify as substantial affirmative or defensive action waiving the right to remove. *Liebau v. Columbia Cas. Co.*, 176 F.Supp.2d 1236 (D. Kan. 2001). Furthermore, courts have emphasized that the mere filing of a motion which may be dispositive does not waive the right to remove. *E.g., Rose v. Giamatti*, 721 F.Supp. 906 (S.D. Ohio 1989) (holding that a defendant's appearing and contesting plaintiff's entitlement to temporary restraining order, seeking appellate review of issuance of that order, and conducting discovery for preliminary injunction hearing did not constitute waiver); *Bedell v. H.R.C., Ltd.*, 522 F.Supp. 732 (E.D. Ky. 1981) (finding defendant's motion to abate and dismiss did not constitute waiver); *Baldwin v. Purdue, Inc.*, 451 F.Supp. 373 (E.D. Va. 1978) (finding that filing of a demurrer did not constitute waiver); *Hildreth v. General Instrument, Inc.*, 258 F.Supp. 29 (D.S.C. 1966) (same). The Court agrees with the reasoning expressed by these sister courts. Taking steps to vacate a default judgment is distinguishable from

the type of substantial action which has been held to constitute a waiver. *E.g., Estate of Krasnow v. Texaco, Inc.*, 733 F.Supp. 806 (E.D. Va. 1991) (holding a defendant waived right to remove by awaiting state court's decision on demurrer); *Bolivar v. Sand Co. Inc. v. Allied Equip. Inc.*, 631 F.Supp. 171 (W.D. Tenn. 1986) (holding a defendant waived right to remove by awaiting state court's decision on a dispositive motion). Because the actions taken by U.S.L. in state court fail to establish the type of substantial step necessary to manifest a clear and unequivocal intent to proceed solely in state court, U.S.L. did not waive its right to remove this action to federal court.

### 5.     Effectiveness of the Notice of Removal

Finally, the Court addresses Hawes' argument that U.S.L.'s Amended Notice of Removal was defective in that it established only the states of residence of the parties and not their states of citizenship. Hawes correctly avers that a statement merely of a party's residence will not establish facts necessary to support diversity jurisdiction. *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660 (4th Cir. 1998). An examination of U.S.L.'s Amended Notice of Removal, however, shows that U.S.L. did properly allege facts which establish the citizenship of the parties. U.S.L. stated that

> [1] [a]t the time of the commencement of the above-entitled action, the individual Plaintiff was and still is a citizen of the State of South Carolina; [2] [a]t the time of the commencement of the above-entitled action, the Estate Plaintiff was and still is established under the laws of the State of South Carolina and operating out of South Carolina with the individual Plaintiff as its Administrator or Executor; [3] [a]t the time of the commencement of the above-entitled action, and at the time of this Removal, the Defendant U.S.L. Products was and still is a business corporation operating under and doing business pursuant to the laws of the State of Minnesota, with its last principal place of business located in Minnesota; [4] [t]he Defendant Hunter's Hideout, Inc. was a non-diverse Defendant with its principal place of business in Johnston, South Carolina. Upon information and belief, the Defendant Cart Products, Inc. f/k/a Warren & Sweat Manufacturing Co., Inc. was a diverse Defendant, but has now been voluntarily dismissed from the action regardless; [5]

> [t]he Defendant U.S.L. Products, as the only surviving Defendant, hereby seeks to invoke the jurisdiction of [this Court]; [6] [s]pecifically, the above-entitled action is a matter over which this Court has original jurisdiction...in that...there is diversity of citizenship between the parties that are properly joined in this action; the Plaintiff being from the State of South Carolina and the Defendant, U.S.L. Products, Inc., being from the State of Minnesota.

Amended Notice of Removal at 2-4.  Hawes argues that U.S.L.'s failure to state the citizenship of Hunter's Hideout and Cart Products at the time of the commencement of the suit renders the Notice of Removal fatally defective.  However, the Notice of Removal, though not entirely clear in some of its terms, does establish the citizenship–both at the time of removal and at the time this action was originally filed–of Hawes and U.S.L., the only remaining parties.  In addition, the Notice of Removal, while not indicating the exact states of citizenship of Hunter's Hideout and Cart Products at the commencement of the action in state court, does indicate that the former was non-diverse when this action was filed and the latter was, upon information and belief, diverse.  The Notice of Removal then goes on to note that both Hunter's Hideout and Cart Products have been dismissed from the lawsuit and that U.S.L. Products is the only remaining defendant.  Thus, the Notice of Removal has accomplished its purpose of giving the Court a "short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), which enables the Court to determine that it has diversity jurisdiction based on the citizenship of the remaining parties.  *Cf. Roche v. Lincoln Prop.*, 373 F.3d 610, 615 (4th Cir. 2004 ("[I]n diversity cases, the general rule is that the citizenship of the real parties in interest is determinative for purposes of diversity interest.")

Based on the above, the Court finds that Hawes' motion to remand this action to state court should be denied.

### B.	Motion for Relief from Entry of Default

U.S.L. argues that this Court should vacate the order of default entered by the South Carolina Court of Common Pleas in July of 2004. Specifically, U.S.L. asserts that: (1) U.S.L. was never properly served and, so, cannot be subject to an entry of default and (2) justice requires relief from the entry of default because U.S.L. did not manufacture the product which allegedly caused Hawes' injury. For the reasons stated below, the Court will grant U.S.L.'s motion.

#### 1.	Power of a federal court to vacate a state court's entry of default

Upon removal of a case from state to federal court, a federal court must accord full faith and credit to all valid proceedings which took place in state court prior to removal. *Resolution Trust Corp. v. Allen*, 16 F.3d 568 (4th Cir. 1994). Thus, this Court begins consideration of U.S.L.'s motion under the assumption that the entry of default by the state court was valid and is in effect. *See id.* at 573 (holding that upon removal of a case to federal court, district court should adopt state court's judgment as its own); *see also Butner*, 324 F.2d at 784 (holding federal court must give effect to prior state entry of default). That being said, it is well established that a federal district court has jurisdiction to consider a motion for relief from an order of default entered in state court. *E.g., Harter Township*, 103 U.S. at 566; *French v. Hay*, 89 U.S. (22 Wall.) 238, 249 (1875); *Munsey*, 227 F.2d at 903. To be more specific, federal courts have the power to set aside an state court's entry of default in three situations: first, when a state court lacked jurisdiction to make an entry of default, *Lathrop-Shea & Henwood Co. v. Interior Constr. & Improvement Co.*, 150 F. 666 (C.C.N.Y. 1907)*, rev'd on other grounds*, 215 U.S. 246 (1909) (setting aside default when defendant could not be served in manner attempted), *Veeck v. Commodity Enterprises, Inc.*, 487 F.2d 423 (9th Cir. 1973) (holding that where defendant improperly served state default judgment is void); second, when a

state court could have vacated its own default judgment, *Harter*, 103 U.S. at 566 (finding federal court had power to set aside default judgment when state court could have done so due to insufficiency of service of process), *French*, 89 U.S. (22 Wall.) at 249 (finding federal court had same power in a case as the state court did while the case was before it), *Munsey*, 227 F.3d at 903 (holding that, on removal, a federal court proceeds as though a state court would at that juncture), *Cady v. Associated Colonies*, 119 F 420, 423-24 (C.C.Cal. 1902) (holding a federal court had power to vacate a default judgment where defendant improperly served); and third, when a federal court could have vacated the entry of default, *Berberian v. Gibney*, 514 F.2d 790, 793 (1st Cir. 1975) (holding federal court can vacate when default entered after removal), *Butner*, 324 F.2d at 785-86 (finding a federal court had power to set aside default even when state court lacked power to do so).

In the instant case, U.S.L. properly seeks relief under Fed. R. Civ. P. 55(c) from an entry of default in state court.[3] According to this Rule, a court may set aside an entry of default "for good cause shown." Fed. R. Civ. P. 55(c). U.S.L. bases its motion for relief from default on the assertion that it was not properly served with a copy of the summons and complaint and, thus, had no notice of this suit against it. Lack of effective service of process will establish "good cause" warranting relief from an entry of default. *Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1135-36 (4th Cir. 1984) ("Absent effective service of process, a court is without jurisdiction to render a personal judgment against a defendant. . . . A judgment entered against a party over whom a court lacks

---

[3] The Court finds that U.S.L. need not seek relief under Fed. R. Civ. P. 60(b) because Hawes obtained only an *entry* of default, and not a default *judgment*, in state court. U.S.L. removed this case to this Court prior to the scheduled unliquidated damages hearing which would have, presumably, determined whether to award a default *judgment* to Hawes.

personal jurisdiction is void and furnishes a ground for relief [from default]."). Therefore, the Court must consider whether U.S.L. was properly served in this case.

### 2. Legal standards for service of process

"If service of process is made pursuant to state law, the federal court must apply both federal and state law–federal law to determine the constitutional validity of service and state law to see if the procedures set out in the applicable state statute or rule have been followed." *Id.* at 1136 (internal punctuation omitted). In the present case, U.S.L. appears to challenge the constitutional sufficiency of service of process; however, the Court will first address U.S.L.'s arguments that service was ineffective under South Carolina law. *See Bell Atl. Md., Inc. v. Prince George's County., Md.*, 212 F.3d 863, 865 (4th Cir. 2000) ("[C]ourts should avoid deciding constitutional questions unless they are essential to the disposition of a case.").

South Carolina law affords several options for service of process on a corporation such as U.S.L. First, personal service may be made within the State of South Carolina

> by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

S.C. R. Civ. P. 4(d)(3). Second, service on an officer, managing or general agent, or any other agent authorized by appointment or law may be made

> by registered or certified mail, return receipt requested and delivery restricted to the addressee. Service is effective upon the date of delivery as shown on the return receipt. Service pursuant to this paragraph shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing the acceptance by the defendant. Any such default or judgment by default shall be set aside pursuant to Rule 55(c) or Rule 60(b) if the defendant demonstrates to the court that the return receipt was signed by an unauthorized person. If delivery of the

14

process is refused or is returned undelivered, service shall be made as otherwise provided by these rules.

S.C. R. Civ. P. 4(d)(8).  Third, service may be made pursuant to a statute authorizing service of process.  S.C. R. Civ. P. 4(d)(7).  Here, the relevant statute is the South Carolina Long Arm Statute, S.C. Code Ann. § 36-2-804.  This section provides that where jurisdiction over a defendant is exercised pursuant to the Long Arm Statute, service may be made without South Carolina.  Section 36-2-806 provides specific requirements for manner and proof of service under the Long Arm Statute:

> (1) When the law of this State authorizes service outside this State, the service, when reasonably calculated to give actual notice, may be made:
>
> (a) by personal delivery in the manner prescribed for service within the State;
> (b) in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction;
> (c) by registered or certified mail as provided in Rule 4(d)(8) of the South Carolina Rules of Civil Procedure addressed only to the person to be served and requiring a return receipt showing the acceptance by the defendant. Entry of default and default judgments shall be subject to the conditions of Rule 4(d)(8); or
> (d) as directed by the court.
>
> (2) Proof of service outside this State may be made by affidavit of the individual who made the service or in the manner prescribed by law of this State, the order pursuant to which the service is made, or the law of the place in which the service is made for proof of service in an action in any of its courts of general jurisdiction. When service is made pursuant to item (c) of subsection (1) of this section, proof of service shall include a receipt signed by the addressee.

### 3.     Service of process on U.S.L.

In the instant case, it is undisputed that Hawes did not serve U.S.L. or one of its agents within the State of South Carolina.[4]  Therefore, service was not made pursuant to S.C. R. Civ. P.

---

[4] U.S.L. alleges that it maintained a registered agent for service of process in South Carolina and that Hawes failed to attempt service on this agent.  As Hawes has not filed a

4(d)(3) or 4(d)(8), and the only arguable basis for service in this case is that provided in S.C. Code Ann. § 36-2-806. Hawes, then, either properly served U.S.L. (1) as authorized by the laws of the State of Minnesota or (2) by registered or certified mail, return receipt requested, delivery restricted to the addressee, or she failed to provide sufficient service of process.

Hawes alleges that she properly served U.S.L. by delivering the pleadings to the Minnesota Secretary of State pursuant to Minn. Stat. § 302A.901 on May 26, 2004, and by notifying Terri McIntosh, an insurance agent of Liberty Surplus Lines, an insurance carrier for U.S.L., of the pendency of this lawsuit. Clearly, the latter did not provide U.S.L. with sufficient service of process. First, nothing in the record indicates that McIntosh or Liberty Surplus Lines was an agent registered to receive process on U.S.L.'s behalf. Second, even if McIntosh or Liberty Surplus Lines were an agent of U.S.L., Hawes never served either with a copy of the summons and complaint but merely sent letters notifying them of the existence of Hawes' lawsuit. Likewise, Hawes failed to provide proper service of process by serving a copy of the summons and complaint on the Minnesota Secretary of State.

As noted by U.S.L., Minnesota law permits service on the Secretary of State only in cases where an agent or officer of the corporation cannot be served. Minn. R. Civ. P. 4.03; Minn. Stat. §5.25. Hawes has failed to demonstrate that an officer or agent of U.S.L. could not be served. While Hawes did file an affidavit stating that she had attempted to make personal service on U.S.L. in Minnesota, the record indicates that she never attempted to serve U.S.L.'s registered agent in South

---

response to U.S.L.'s motion to vacate the entry of default, she has not provided the Court with any facts which directly contradict this allegation of U.S.L. The Court notes, however, that it appears from Hawes' memorandum in support of her motion to remand that Hawes did not attempt service on any registered agent of U.S.L. in South Carolina. *See* Plaintiff's Memorandum at 3.

Carolina. See supra at 15 n.4. Furthermore, Minnesota law provides that service on the Secretary of State can only occur if

> a private corporation has no officer at the registered office of the corporation within the state upon whom service can be made, of which that the return of the sheriff of the county in which that office is located, or affidavit of a private person not a party, that none can be found in that county [is presented].

Minn. Stat. § 543.08. Here, Plaintiff failed to submit an affidavit showing that no officer of U.S.L. could be found in the county where U.S.L. maintained its headquarters. Therefore, Hawes did not comply with the requirements for service of process under Minnesota law.

Finally, the Court notes the absence of any return receipt for any of Hawes' efforts to serve U.S.L. by certified mail. Under South Carolina law, the existence of a return receipt either signed by the defendant or showing that mail was returned is critical to effective service by mail. S.C. R. Civ. P. 4(d)(8). Moreover, S.C. R. Civ. P. 4(d)(8) specifically provides that where a plaintiff fails to present a return receipt, a court is prohibited from noting an entry of default or entering a default judgment against a defendant allegedly served by mail.

In sum, Hawes failed properly to serve U.S.L. pursuant to any of the methods of service afforded to plaintiffs by South Carolina law.[5] Hawes' failure to serve U.S.L. leads to the Court's decision to grant U.S.L's motion for relief from entry of default. In this context, the Court of Appeals has emphasized that the "clear policy of the federal rules is to encourage disposition of claims on their merits." *Loy*, 490 F.2d at 1135. Further, under Rule 55(c), the principal factors bearing on the appropriateness of relieving a party of default are whether setting it aside would

---

[5] Therefore, the Court does not reach the issue of whether Hawes offended the United States Constitution by failing to provide adequate notice to U.S.L. of the pendency of this lawsuit.

prejudice the adversary and whether a meritorious defense is presented. *Central Operating Co. v. Utility Workers of America, AFL-CIO*, 491 F.2d 245, 252 (4th Cir. 1974). The Court finds no evidence that Hawes would be prejudiced by the setting aside of the entry of default against U.S.L., especially as Hawes can continue to litigate the merits of her action in this Court. The Court also notes the abundance of virtually uncontradicted evidence in the record establishing the existence of a meritorious defense to Hawes' underlying products liability claims. *See* Defendant's Memorandum, Second Supplemental Affidavit of Michael Scardato, Defendant's Supplemental Memorandum, Third Supplemental Affidavit of Michael Scardato, and Supplemental and Corrected Affidavit of Margie Rish.

In addition to these factors, the Court can consider whether the moving party acted with reasonable promptness in attacking the entry of default. *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982). In the instant case, U.S.L. filed its motion for relief from default in state court almost immediately upon appearing in the suit and refiled the motion immediately upon removing this action to federal court. Thus, it proceeded with reasonable promptness in moving for relief. Finally, as this Court must liberally construe the rules authorizing relief from default so as to favor adjudicating claims on their merits, *Augusta Fiberglass*, 843 F.2d at 810-11; *Tolson*, 411 F.2d at 130, the Court finds that the facts of the instant case more than satisfy the standard for granting relief from entry of default. Therefore, the Court will grant U.S.L's motion.

## V.     CONCLUSION

Based on the foregoing, and after a thorough review of the relevant law and the record, it is the judgment of this Court that Hawes' motion to remand to state court be **DENIED** and U.S.L.'s

motion for relief from entry of default, to vacate the order of reference, and to vacate notice of the unliquidated damages hearing be **GRANTED**.

**IT IS SO ORDERED**.

Signed this 29th day of August, 2005, in Spartanburg, South Carolina.

s/ Henry F. Floyd  
HENRY F. FLOYD  
UNITED STATES DISTRICT JUDGE